## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LAUREL SAND & GRAVEL, INC.   *
14504 Greenview Drive, Suite 210
Laurel, MD 20708-3225        *

    Plaintiff                *

        v.            *      Case No. _____

MEEKER EQUIPMENT CO., INC.   *
4381 Front Mountain Road
Belleville, PA 17004         *

    Defendant                *

## COMPLAINT

LAUREL SAND & GRAVEL, INC., Plaintiff, brings this case against

MEEKER EQUIPMENT CO., INC., Defendant, and for its causes of action states

as follows:

### *Parties*

1.    Plaintiff Laurel Sand & Gravel, Inc. is a Maryland corporation

engaged in the mining, processing and sale of stone and other aggregate products

from its above-captioned principal place of business in Laurel, Maryland.  Plaintiff

("Laurel") is also engaged in the production and sale of asphalt products through

its internal division known as "Laurel Asphalt."

2.    Defendant Meeker Equipment Co., Inc. ("Meeker") is a Pennsylvania

corporation engaged in the manufacture, sale and/or distribution of asphalt

producing machinery and equipment at its above-captioned principal place of business in Belleville, Pennsylvania.

3.     As is alleged below, Laurel and Meeker entered into a commercial transaction in which Meeker sold and installed various asphalt equipment at Laurel's plant in Laurel, Maryland, which transaction is the subject of this action.

*Jurisdiction & Venue*

4.     Pursuant to 28 U.S.C. §1332(c), this court has subject matter jurisdiction in this case because Laurel and Meeker are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs. Additionally, the agreement entered into between the parties referenced below provides that this court shall have jurisdiction over this matter.

5.     Pursuant to 28 U.S.C. §1391, venue is proper in the Middle District because Defendant Meeker maintains its principal place of business in Belleville, Pennsylvania which is located in this district.

*Factual Allegations Common To All Counts*

6.     In 2016, Laurel determined it needed to completely overhaul and modernize its asphalt production facility in Laurel, Maryland.

7.     To that end, Laurel contacted Meeker and the parties entered into negotiations in which Meeker and its suppliers and manufacturers would supply

equipment and machinery to Laurel in accordance with specifications, performance and production criteria furnished by Laurel to Meeker.

8.      On or about August 23, 2016, Laurel and Meeker entered into a written agreement entitled "Quote # MECQ6698-FINAL" (the "Agreement"), a copy of which is attached hereto and incorporated herein as **Exhibit No. 1.**

9.      The Agreement contained terms and conditions and 37 separate line items for equipment, materials, goods and services that Meeker agree to furnish to Laurel for the total price of $2,925,000.  These items included screens, conveyors, supports, catwalks, drums, drives, control systems, motors, tanks,  pipes, control systems and engineering services required to furnish a "turnkey" asphalt plant to Laurel.

10.     Meeker provided the following limited warranty under the Agreement in pertinent part:

## TERMS AND CONDITIONS

***

## NEW EQUIPMENT STANDARD LIMITED WARRANTY

All new equipment manufactured and/or parts manufactured by our company are sold to be free of defects in material and fabrication for a period of six months from the date of shipment.  In many instances, equipment and materials not manufactured or designed by our company are used on your final product.  Our company will extend only the original manufacturer's warranty to you.

***

Agreement, Terms and Conditions, p.2.

11.     During the later part of 2016, Meeker manufactured and/or acquired from its suppliers the items specified in the Agreement.  These were delivered to Laurel and were incorporated into its asphalt plant.

12.     Beginning from "day one" after its installation, Laurel observed that Meeker's dryer drum was not functioning properly and presented what could have been a catastrophic failure of the entire plant.

13.     By example and not by way of limitation, Meeker's dryer drum was defective in the following respects:

a.     It was misaligned and remained misaligned despite having been realigned on three separate occasions.

b.     Laurel was unable to "make face contact with the tire and trunnions" which caused the dryer to not "float" as designed and as is required for proper operation; this is a standard drum alignment practice which Meeker was unable to meet; and

c.     the dryer was designed to have 14 gear teeth engaged at all times but Laurel was only able to achieve a maximum of 9 teeth engaged on the girth sprocket.

14.     In addition to experiencing problems with the design, manufacture and operation of the dryer drum, Laurel also experienced other problems with Meeker's equipment and performance including the following:

a.      a Virgin Calibration Chute needed to be added because Meeker's design and equipment were incapable of transferring material from the conveyor to the "slinger belt" which prevented the emptying of the bins and proper calibration;

b.      the Agreement specified a two-story control tower but Meeker failed to provide a stairway to the second floor;

c.      Meeker failed to provide a concrete pier to support the Virgin Scale Conveyor;

d.      a Rap Calibration Chute needed to be added and extended for proper materials handling; and

e.      the dust screws did not work properly requiring the installation of an airlock and drive.

15.     Immediately after it began experiencing these problems, Laurel notified Meeker and requested Meeker's assistance in implementing remedies to ensure the proper operation of the asphalt plant.

16.     In 2017, the parties (and representatives from other manufacturers and suppliers) met on numerous occasions at the plant in Laurel to assess the many design and operational problems.

17.     Laurel contractually expected, and requested, that Meeker and its suppliers would correct the design flaws, repair and/or replace defective equipment and parts, and would otherwise ensure that the plant would function normally and in accordance with the understanding and purpose of the Agreement.

18.     Instead, Meeker and its suppliers:

a.      offered inadequate and piecemeal remedies that were unsuccessful when implemented;

b.      required Laurel to purchase and install various add-ons and fixes that were not included in the original specifications or the Agreement;

c.      sought to charge Laurel for these inadequate remedies, add-ons and fixes that were not the responsibility of Laurel under the Agreement; and

d.      generally failed supporting Laurel in its efforts to remedy the very serious problems it was experiencing with Meeker's equipment and services.

19.     Later in 2017, Laurel determined that the dryer drum as designed, installed and operated would never function properly, would never be redesigned,

fixed or repaired by Meeker, and would never be replaced by Meeker despite demands by Laurel for all such remedies.

20.     As a result, Laurel determined it had no commercially reasonable alternative to replacing the entire dryer drum which it did at its own cost of approximately $361,000 in late 2017.

21.     When it did so, it requested and demanded that Meeker fully reimburse Laurel for all costs and expenses which Laurel incurred in correcting the numerous problems at its new asphalt plant.

22.     Meeker declined Laurel's requests and demands in this regard and the parties exchanged letters assigning blame and responsibility to the other.

### Count One - Breach of Written Contract

23.     Laurel incorporates herein by reference the allegations and Exhibit set forth above.

24.     The foregoing actions and inaction by Meeker constitute breaches of the Agreement by Meeker as to Laurel.

25.     As a direct and proximate result of such breaches by Meeker, Laurel has sustained economic losses and damages which are the responsibility and obligation of Meeker.

WHEREFORE, Laurel Sand & Gravel, Inc. demands judgment in its favor and against Meeker Equipment Co., Inc. and claims compensatory damages in an

amount to be determined at trial but which are equal to or greater than $75,000, plus prejudgment interest, court costs and its reasonable attorney's fees.

## Count Two – Implied-in-fact Contract

26.    Laurel incorporates herein by reference the allegations and Exhibit set forth above.

27.    Assuming, in the alternative, there was no express written contract or agreement as averred in Count One above, the parties' representations, conduct, terms and conditions, and course of dealing, as well as the circumstances alleged above, reflect that an implied-in-fact contract existed between Laurel and Meeker.

28.    Under the implied-in-fact contract, Meeker agreed to comply with the terms and conditions, limited warranty, and other obligations alleged in Count One above.

29.    As alleged in Count One above, Meeker breached its express and implied obligations to Laurel.

30.    As a direct and proximate result of such breaches by Meeker, Laurel has sustained economic losses and damages which are the responsibility and obligation of Meeker.

WHEREFORE, Laurel Sand & Gravel, Inc. demands judgment in its favor and against Meeker Equipment Co., Inc. and claims compensatory damages in an

amount to be determined at trial but which are equal to or greater than $75,000, plus prejudgment interest, court costs and its reasonable attorney's fees.

## Count Three - Negligence

31.    Laurel incorporates herein by reference the allegations and Exhibit set forth above.

32.    At the time and place complained of above, Meeker had the following common law duties to Laurel including, without limitation, the following:

a.    to use ordinary and reasonable care in the design of the asphalt plant;

b.    to use ordinary and  reasonable care in the manufacture of the component parts and equipment in the asphalt plant;

c.    to use ordinary and  reasonable care in the installation of the asphalt plant;

d.    to use ordinary and  reasonable care in the "troubleshooting" and/or repair and/or replacement of defective parts and components in the plant.

33.    As a direct and proximate result of such negligence by Meeker, Laurel has sustained economic losses and damages which are the responsibility and obligation of Meeker.

WHEREFORE, Laurel Sand & Gravel, Inc. demands judgment in its favor and against Meeker Equipment Co., Inc. and claims compensatory damages in an

amount to be determined at trial but which are equal to or greater than $75,000, plus prejudgment interest, court costs and its reasonable attorney's fees.

Respectfully submitted,

KEEFER WOOD ALLEN & RAHAL, LLP

Dated:  03/26/2018        By    /s/ Bradford Dorrance

Bradford Dorrance, Esquire
Attorney I.D. # 32147
417 Walnut Street, 4th Floor, Rear
P. O. Box 11963
Harrisburg, PA 17108-1963
bdorrance@keeferwood.com
(717) 255-8014 (phone)
(717) 255-8042 (fax)

Attorneys for Plaintiff